# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

**SHELENE JEAN-LOUIS and JUDES PETIT-FRERE, on behalf of themselves and others similarly situated,**

    **Plaintiffs,**

**v.**                                                 **Case No.  8:13-cv-3084-T-30AEP**

**CLEAR SPRINGS FARMING, LLC, FLORIDA GOLD CITRUS, INC., JACK GREEN, JR., HOWARD LEASING , INC., and HOWARD LEASING III, INC.,**

    **Defendants.**
_____/

## ORDER

THIS CAUSE comes before the Court upon Defendants Howard Leasing, Inc. and Howard Leasing III, Inc.'s Renewed[1] Motion for Summary Judgment (Dkt. 82), Defendants Clear Springs Farming, LLC, Florida Gold Citrus, Inc., and Jack Green, Jr.'s Motion for Summary Judgment (Dkt. 84), Plaintiffs' Responses in Opposition (Dkts. 93 & 94), and Defendants' Replies (Dkts. 103 & 104).  The Court, having considered the motions, responses, replies, record evidence, and being otherwise advised in the premises, concludes that the motion filed by the Howard Leasing Defendants should be granted and the motion filed by the remaining Defendants should be denied.

---

[1] The Court denied Howard Leasing Defendants' initial motion for summary judgment as premature (Dkt. 60).

# INTRODUCTION

Plaintiffs Shelene Jean-Louis and Judes Petit-Frere brought the instant class action on behalf of themselves and others similarly situated against Defendants for race, color, and national origin discrimination in their employment under 42 U.S.C. § 1981, Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e, *et seq.*, and the Florida Civil Rights Act, as amended, 760.01 - 760.11, Fla. Stat. (2013). Specifically, Plaintiffs allege that they are black/Haitian/Afro-Haitian/African American. Defendants recruited them to pick blueberries during the March 2012 season. Plaintiffs, along with over 100 other black/Haitian/Afro-Haitian/African American farm workers traveled to Lake Wales, Florida, to pick blueberries for Defendants. Plaintiffs' crew leader was Alteric Jean-Charles. Plaintiffs reported for work from about March 19, 2012, until about March 27, 2012; they were denied work each day. Plaintiffs were never provided any work during this period of time and returned home without any compensation. Plaintiffs allege that Defendants' failure to provide them with any work constituted unlawful race, color, and national origin discrimination.

On July 1, 2014, the Court certified the instant class as:

> **any and all black/Haitian/Afro-Haitian/African American seasonal agricultural employees or farm-workers of Defendants who applied to and/or were hired by Defendants on or about March 19, 2012 for a specific crew with the group designation of C13 for a six (6) week period during the 2012 Florida harvesting season and not provided any work by Defendants on the basis of their race, color, and/or national origin.**

(Dkt. 49).

Defendants Howard Leasing, Inc. and Howard Leasing III, Inc. (collectively, "Howard Leasing Defendants") argue that the claims against them fail as a matter of law because they were not Plaintiffs' "employer." They also argue that the record is undisputed that they did not participate in the alleged discrimination.

Defendants Clear Springs Farming, LLC, Florida Gold Citrus, Inc., and Jack Green, Jr. (collectively, "Farm Defendants") argue that Plaintiffs cannot establish a prima facie case of discrimination as a matter of law. They also argue that Plaintiffs cannot establish pretext.

As explained below, the Court agrees that Howard Leasing Defendants are entitled to summary judgment because the record is clear that they played no role in Green's failure to hire Plaintiffs and the record is bereft of any evidence that Howard Leasing Defendants were even aware of any discriminatory act against Plaintiffs. However, there are too many genuine and material factual disputes that preclude entry of summary judgment in favor of Farm Defendants.

**RELEVANT FACTS**

Defendant Clear Springs Farming, LLC operates a blueberry farm in Homeland, Florida. Clear Springs contracts with Defendant Florida Gold Citrus, Inc. to operate the farm through a grower agreement. Florida Gold is responsible for the growing and harvesting activities at the blueberry farm. Defendant Jack Green owns Florida Gold and operates the Homeland blueberry farm.

Clear Springs contracts with Howard Leasing Defendants to provide payroll and employment administrative services for the farm workers who harvest blueberries at the

farm. Specifically, on January 12, 2012, Howard Leasing III and Clear Springs entered into a "Florida Service Agreement" that set forth the parties' respective roles; for example, Howard Leasing III agreed to provide administrative, payroll, and other human resources services to Clear Springs. Clear Springs also leases employees from Howard Leasing Defendants. With respect to hiring farm labor, Howard Leasing Defendants are responsible for accepting applications and making sure they are accurately completed.

Clear Springs' Homeland blueberry farm is one of the largest blueberry farms in Florida and consists of approximately 370 acres of blueberry plants. The blueberry plants are arranged in rows. The harvest season occurs every March. Green is responsible for operating the Homeland blueberry farm. Green has over 19 years experience managing the harvest of blueberries in Polk County, Florida. Clear Springs depends on hand harvesting of the blueberry crop because the blueberry plants in Florida are too delicate for mechanical harvesting. Over the years, Green developed working relationships with local farm labor contractors, also known as crew leaders, who hand harvest the blueberry crop. The crew leaders operate crews of farm workers; the crews range in size from as few as 100 to several hundred workers. Green does not interact with the farm workers directly.

Jean-Charles, Plaintiffs' crew leader, is Haitian. He became a crew leader after observing that it was difficult for Haitians to get work on farms. According to Jean-Charles, farms typically hire Mexican workers. Jean-Charles visited the Homeland blueberry farm and spoke with Green regarding labor opportunities for Jean-Charles and his crew. They discussed how many workers Jean-Charles could provide to Green to hand pick the

blueberries during the March 2012 season. According to Jean-Charles, Green told him that there would be work available for Jean-Charles' crew if Jean-Charles provided 125 farm workers. The job was for approximately six weeks.

On March 19, 2012, Jean-Charles brought his crew to the Homeland blueberry farm. They had traveled there from Fort Pierce, Florida. All of the farm workers were Haitian. They arrived as a group to fill out applications. The farm workers filled out various forms; they were issued ID badges and told that they would start work the next day.

On March 20, 2012, and every day until about March 27, 2012, Jean-Charles and his crew arrived at the blueberry farm in the morning, ready to begin work, and were told there was no work available for them. On or about March 27, 2012, they were told that there was not going to be any work for them. It is undisputed that Green selected the crews that were provided work on the Homeland blueberry farm. According to Jean-Charles, Green did not explain or provide a reason to him as to why there was no work for Jean-Charles' Haitian farm workers.

According to Green, he gave priority to the crews he had worked with in the past. Green preferred to use crew leaders with whom he had the longest working relationship because he could depend on these crew leaders to arrive to the farm when he called them and to provide a sufficient number of productive farm workers. Green had not previously worked with Jean-Charles or Salvador Grajeda, another crew leader who was not given work.[2] As

---

[2] Grajeda's crew was comprised of approximately sixty percent Hispanic/Mexican workers and forty percent Haitian workers.

such, Jean-Charles and Grajeda's crews were not selected over crews that Green had a previous working relationship.

According to Green, once the blueberry season begins, he is faced with a constant gauging and analysis of the amount of blueberries that appear to be ready for harvest against the available farm labor. This includes daily visits to the fields themselves to inspect the plants. Additionally, because the amount of production during the harvest starts low and then increases, Green cannot flood the field with workers at the beginning of the harvest. During the first days of the harvest, Green will utilize only a portion of one or two crews.

As the March 2012 blueberry harvest progressed, Green became more and more certain that he would not need either Jean-Charles or Grajeda's crews. According to Green, production was about half of what he projected. Rather than producing the estimated 2.34 million pounds of blueberries, the actual 2012 harvest was approximately 1.5 million pounds. Consequently, Green required much less labor for the 2012 harvest than anticipated at the time he had initial communications with Jean-Charles and Grajeda.

As stated in more detail below, there are disputed facts in the record related to the reason Green provided for failing to hire Jean-Charles' crew, who are the class members in this case. There are also disputed facts on the issue of whether Green continued to hire Hispanic/Mexican farm workers after he told Jean-Charles and Grajeda that he did not need any additional farm labor. For example, according to Jean-Charles, he observed Defendants accepting more applications after he and his crew were told that there was no work available for them. Grajeda, also after being informed that there was no work for his crew, observed

Green hire the Hispanic/Mexican workers from Grajeda's crew. Green did not hire any of the Haitian workers from Grajeda's crew.

The record is undisputed that Green was solely responsible for selecting the farm crew for the March 2012 blueberry season. Green testified as follows during his November 3, 2014 deposition:

> Q. Who made the decision as to which crews worked and which crews did not?
> A. I did.
> Q. Anyone else?
> A. No.

(Dkt. 82-4 at 79:17-21).

Green testified that he utilized a seniority system in deciding which crew to hire for the blueberry season. Green based his decision on "[e]xperience, seniority, past relationships." *Id.* at 79:14.

With respect to Howard Leasing Defendants, Green testified that they were not involved in the hiring decision:

> Q. Just to be clear. The question was: Was anyone at Howard Leasing involved with your decision as to which workers or crews to hire to work on that farm?
> A. No.

*Id.* at 111:14-18.

Amy Pomeroy, Clear Springs' Vice President of Finance also testified during her December 4, 2014 deposition that Green made the decision as to which individuals were going to be hired to pick blueberries during the 2012 blueberry season. Charles Perry

Howard, Howard Leasing Defendants' corporate representative similarly testified during his December 9, 2014 deposition that Howard Leasing Defendants had no role in selecting who was going to pick the blueberries.

Plaintiffs' discrimination claim in this class action is that they were not selected to pick blueberries during the 2012 blueberry season because of their race, color, or national origin (Haitian) - there are no other discriminatory acts alleged in the complaint.

## SUMMARY JUDGMENT STANDARD

Motions for summary judgment should be granted only when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The existence of some factual disputes between the litigants will not defeat an otherwise properly supported summary judgment motion; "the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (emphasis in original). The substantive law applicable to the claimed causes of action will identify which facts are material. *Id.* Throughout this analysis, the court must examine the evidence in the light most favorable to the non-movant and draw all justifiable inferences in its favor. *Id.* at 255.

Once a party properly makes a summary judgment motion by demonstrating the absence of a genuine issue of material fact, whether or not accompanied by affidavits, the nonmoving party must go beyond the pleadings through the use of affidavits, depositions,

answers to interrogatories and admissions on file, and designate specific facts showing that there is a genuine issue for trial. *Celotex*, 477 U.S. at 324. The evidence must be significantly probative to support the claims. *Anderson*, 477 U.S. at 248-49 (1986).

This Court may not decide a genuine factual dispute at the summary judgment stage. *Fernandez v. Bankers Nat'l Life Ins. Co.*, 906 F.2d 559, 564 (11th Cir. 1990). "[I]f factual issues are present, the Court must deny the motion and proceed to trial." *Warrior Tombigbee Transp. Co. v. M/V Nan Fung*, 695 F.2d 1294, 1296 (11th Cir. 1983). A dispute about a material fact is genuine and summary judgment is inappropriate if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 248; *Hoffman v. Allied Corp.*, 912 F.2d 1379 (11th Cir. 1990). However, there must exist a conflict in substantial evidence to pose a jury question. *Verbraeken v. Westinghouse Elec. Corp.*, 881 F.2d 1041, 1045 (11th Cir. 1989).

## DISCUSSION

**I.     Howard Leasing Defendants' Motion for Summary Judgment**

Howard Leasing Defendants argue that they are entitled to summary judgment because they were not Plaintiffs' employer or potential employer within the meaning of Title VII, FCRA, and Section 1981. Howard Leasing Defendants point out that the record is undisputed that they had nothing to do with the alleged discrimination, i.e., Green's failure to provide Plaintiffs with any work picking blueberries during the March 2012 blueberry season. The Court agrees that the record is clear that Howard Leasing Defendants did not participate in the discrimination; it is also clear that they were not even aware of the

discrimination. Having resolved this issue, the Court need not determine whether Howard Leasing Defendants were Plaintiffs' joint employer.

A joint employer relationship does not automatically expose an employer to liability for actions taken by its co-employer. *See, e.g., Brown v. Cook Cnty.,* No. 10 C 2689, 2012 WL 6055318, at *3 (N.D. Ill. Dec.6, 2012) (stating in an FMLA case that "[n]owhere in the statue [sic] or regulations ... is it suggested that one employer can or should be held liable for the other employer's adverse employment actions solely because of their joint employer relationship .... even if there is a joint employer relationship, each of the defendant employers must have its own relevant contacts with the plaintiff employee for the purposes of FMLA liability"); *Neal v. Manpower Intern., Inc.,* No. 3:00-CV-277/LAC, 2001 WL 1923127, at *9 (N.D. Fla. Sept.17, 2001) (defendant employment agency would not be liable even if the court were to assume for the sake of argument that it was the plaintiff's joint-employer because the employment agency did not have control over the other employer's supervisors who engaged in the harassing conduct and thus had no "opportunity to guard against their misconduct," nor to "screen them, train them, and monitor their performance.") (quoting *Faragher v. City of Boca Raton,* 524 U.S. 775 (1998)).

Courts addressing the liability of temporary employment agencies have held that a staffing or employment agency found to be a joint employer may be held liable under Title VII if the agency knew or should have known of the discriminatory conduct and failed to take prompt corrective measures within its control. *See, e.g., Lima v. Adecco,* 634 F. Supp. 2d 394, 400-01 (S.D.N.Y. 2009), *aff'd* 375 Fed. Appx. 54 (2d Cir. 2010) ("We also agree

with the District Court that even if [the defendants] could be considered a 'joint employer,' [the temporary employment agency] could not be held liable to plaintiff based on that legal theory because there is no evidence that [the agency] either knew or should have known about any of the alleged discrimination.") (citation omitted); *Watson v. Adecco Employment Servs., Inc.,* 252 F. Supp. 2d 1347, 1355-57 (M.D. Fla. 2003) (holding that even if defendant employment agency is a joint employer, it cannot be held liable for the discriminatory conduct because plaintiff cannot show that it "knew or should have known of the conduct and failed to take corrective measures within its control."); *see also Medina v. Adecco,* 561 F. Supp. 2d 162, 178 (D.P.R. 2008).

Although the Eleventh Circuit has not spoken definitively on this issue, it has noted that when discrimination is based on an adverse employment decision, the joint employer theory "concentrate[s] on the degree of control an entity has *over the adverse employment decision on which the Title VII suit is based.*" Llampallas v. Mini-Circuits, Lab, Inc.*, 163 F.3d 1236, 1244-45 (11th Cir.1998) (emphasis added).

There is simply no evidence in the record suggesting that Howard Leasing Defendants had any control over Green's decision related to the crews he chose to hire. Green clearly testified that Howard Leasing Defendants had nothing to do with his decision as to which crews he selected to pick blueberries during the March 2012 season. Pomeroy and Howard similarly testified that Howard Leasing Defendants played no role in the selection of crew leaders and farm workers. As such, there is no basis in the record to hold Howard Leasing

Defendants liable for the discriminatory acts and summary judgment will be entered in their favor.

## II.     Farm Defendants' Motion for Summary Judgment

Farm Defendants argue that Plaintiffs cannot establish as a matter of law that Defendants' failure to hire them was discriminatory on the basis of their race, color and/or national origin in violation of Title VII, the FCRA, and section 1981.  Notably, the essential elements of a section 1981 employment discrimination claim are the same as a Title VII employment discrimination claim.  *See Bass v. Bd. of Cnty. Comm'rs, Orange Cnty., Fla.*, 256 F.3d 1095, 1109 (11th Cir. 2001) (noting same).  Moreover, because the FCRA was patterned after Title VII, decisions construing Title VII are applicable when considering FCRA claims.  *See Harper v. Blockbuster Entm't Corp.*, 139 F.3d 1385, 1387 (11th Cir. 1998).

A plaintiff may establish a prima facie case of discrimination through direct or circumstantial evidence.  *See Jackson v. Rooms To Go, Inc.*, No. 8:06-cv-01596-T-24EAJ, 2008 WL 2824814, at *5 (M.D. Fla. July 21, 2008) (citing *Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1330 (11th Cir. 1998)).  The record is clear that there is no direct evidence of discrimination; therefore, Plaintiffs must prove their claims through the familiar *McDonnell Douglas* circumstantial evidence framework.  *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).

"In a traditional failure-to-hire case, the plaintiff establishes a *prima facie* case by demonstrating that: (1) she was a member of a protected class; (2) she applied and was

qualified for a position for which the employer was accepting applications; (3) despite her qualifications, she was not hired; and (4) the position remained open or was filled by another person outside of her protected class." *E.E.O.C. v. Joe's Stone Crabs,* 296 F.3d 1265, 1273 (11th Cir. 2002). If Plaintiffs establish a prima facie case of employment discrimination, "[t]he burden then must shift to the employer to articulate some legitimate, nondiscriminatory reason" for the employment action. *McDonnell Douglas Corp.,* 411 U.S. at 802. If Farm Defendants meet this burden of production, the presumption of discrimination raised by Plaintiffs' prima facie case is rebutted. *See Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254-56 (1981). Plaintiffs must then show that Farm Defendants' proffered legitimate, non-discriminatory reason is pretextual. *See id.*

To prove pretext, a plaintiff has to show that his "employer's explanation is unworthy of credence." *Jackson v. Ala. State Tenure Comm'n,* 405 F.3d 1276, 1289 (11th Cir. 2005) (citing *Tex. Dep't of Cmty. Affairs,* 450 U.S. at 256). This requires showing "both that the reason was false, and that discrimination was the real reason" for the adverse action. *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 512 n. 4 (1993). A plaintiff may show pretext by pointing to "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" in the proffered reason. *Brooks v. Cnty. Comm'n of Jefferson Cnty., Ala.,* 446 F.3d 1160, 1163 (11th Cir. 2006). A plaintiff may also produce other evidence "which permits the jury to reasonably disbelieve the employer's proffered reason." *Steger v. Gen. Elec. Co.,* 318 F.3d 1066, 1079 (11th Cir. 2003).

Farm Defendants argue in a conclusory fashion that Plaintiffs cannot present any competent evidence to dispute the summary judgment record showing that there were no other crews or farm workers who applied for work after Plaintiffs. Farm Defendants also argue that even if Plaintiffs establish a prima facie case, they cannot establish pretext because Green testified to logical and non-discriminatory reasons for not hiring Plaintiffs - that he had prioritized crew leaders with whom he already had confidence in and experience with, that the actual production of blueberries at the Homeland farm fell far below expectations, and that Green's labor needs therefore were decreased.

The record, reviewed in a light most favorable to Plaintiffs, the non-movants, reflects genuine and material disputed facts on these issues. The record reflects that Farm Defendants continued to process applications after Jean-Charles was told there would be no work for his crew. According to Jean-Charles, Green promised Jean-Charles work and then provided Jean-Charles with no reason for his failure to hire Jean-Charles' crew. According to Grajeda's Declaration, after being told by Green that there was no work for his crew, Green hired Grajeda's Hispanic and Mexican workers "behind [his] back and allowed them to start working in the blueberry fields." Grajeda states: "Mr. Green only hired the Mexican workers from my crew and did not hire any of the Black Haitian workers from my crew." (Dkt. 94-1).[3]

---

[3] Farm Defendants' brief argument in their reply that Grajeda's Declaration lacks foundation and should be disregarded is without merit.

This evidence establishes a triable issue on whether Plaintiffs established a prima facie case. This evidence also presents a genuine dispute and triable issue with respect to the credibility of Green's proffered reasons for not hiring Plaintiffs. A jury could find that the real reason behind Green's failure to hire Plaintiffs was discriminatory. A jury could construe the evidence in favor of Plaintiffs and find that Green hired additional farm workers *after* he told Jean-Charles that there was no work. The record suggests that these farm workers were not Haitian. And some of them came from Grajeda's crew, a crew in which Green did not have a prior working relationship. For these reasons, Farm Defendants' motion for summary judgment must be denied.

Accordingly, it is hereby **ORDERED and ADJUDGED** that:

1. Defendants' Howard Leasing, Inc. and Howard Leasing III, Inc.'s Renewed Motion for Summary Judgment (Dkt. 82) is granted.

2. The Clerk of Court is directed to enter final judgment in favor of Defendants Howard Leasing, Inc. and Howard Leasing III, Inc. and against Plaintiffs.

3. Defendants Clear Springs Farming, LLC, Florida Gold Citrus, Inc., and Jack Green, Jr.'s Motion for Summary Judgment (Dkt. 84) is denied.

**DONE** and **ORDERED** in Tampa, Florida on May 14, 2015.

*[Signature]*
JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

**Copies furnished to:**
Counsel/Parties of Record